United States District Court
for the
Southern District of Florida

| Matthew Mramer, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 19-21187-Civ-Scola |
| | ) | |
| State Farm Mutual Automobile Insurance Co., Defendant. | ) | |

**Order on Cross Motions for Summary Judgment**

Now before the Court are the Plaintiff Matthew Mramer's motion for partial summary judgment (ECF No. 23) and the Defendant State Farm Mutual Automobile Insurance Co.'s ("State Farm") motion for summary judgment. (ECF No. 28).

1. **Background**

This action arises out of an insurance dispute regarding whether Mramer can recover uninsured or underinsured motorist benefits under his mother's State Farm policy for injuries he sustained in a car accident on November 1, 2017. State Farm issued an automobile insurance policy to Kim Berliner, Mramer's mother. (ECF No. 22 at ¶ 2.) Her name is the first listed as an insured on the Declarations Page. (*Id.* at ¶ 3.) The policy provides benefits to the insured, Kim Berliner, and to her resident relatives. The policy defines resident relative as:

> a person, other than you, who resides primarily with the first person shown as a named insured on the Declarations Page and who is:
>
> (1) related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains a primary residence with the named insured; or
>
> (2) a ward or a foster child of that named insured, his or her spouse or a person described in (1) above.

(*Id.* at ¶ 5.) Mramer sought benefits as a resident relative under the policy, and State Farm denied his claim. Mramer then filed suit in Miami-Dade Circuit Court. (*Id.* at ¶ 6.) The Complaint brings two counts: (1) a claim for declaratory relief and (2) a claim for unpaid insurance coverage under the State Farm policy. The Defendant later removed the case to this Court.

Mramer graduated from Florida Gulf Coast University in 2015. His mother, Kim Berliner, moved to Florida in 2011 and lived there with her son until he graduated. (ECF No. 30 at ¶ 27.) In May of 2015 Kim Berliner moved back to Ohio, where she lived from May 2015 through the date of the accident on November 1, 2017. (ECF No. 22 at ¶ 14.) Mramer worked as an ESPN intern in Cleveland and lived with his mother in Ohio between August 2015 and January 2016. (ECF No. 30 at ¶ 9.) Neither party specifies where Mramer lived from January 2016 until June 2016. From June 2016 through May 2017, Mramer lived in Orlando at an apartment that he had leased for one year. (ECF No. 22 at ¶ 12.) Starting in June 2017, Mramer lived in an apartment in Miami with a roommate. He had signed a one-year lease on the Miami apartment that would expire in on May 31, 2018. (*Id.* at ¶ 17.) Later, after the car accident on November 1, 2017, Mramer renewed his Miami apartment lease, which expired in March 2019. (*Id.* at ¶ 21.)

In his deposition, Mramer testified that he would stay in Miami as long as he had employment and that he was looking for jobs in various cities including Charlotte, New York, and Cleveland. (ECF No. 32 at ¶ 37.) Between June 2016 and November 1, 2018, Mramer visited Ohio multiple times for several days to attend medical doctor's appointments, dentist appointments, and for the holidays. (ECF No. 30 at ¶ 35.) Mramer maintains an Ohio drivers' license, an Ohio voter's registration, and his vehicle is registered in Ohio. (*Id.* at ¶ 29.)

**2. Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see*

*also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Choice of Law

In a diversity action, the federal court must apply the choice-of-law rules of the forum state. *La Farge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). "Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000). "Courts should proceed with extreme caution when called upon to declare transactions as contrary to public policy." *Id.* at 311. To enforce the provision on this ground, "the countervailing public policy must be sufficiently important that it outweighs the policy protecting freedom of contract." *Id.* at 312; *see also, Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012) ("[a]n agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid"). No such public policy concerns have been raised here, nor do any exist that are strong enough to outweigh the parties' freedom of contract. The policy's choice of law provision requires Ohio law to apply in this case, (ECF No. 18 at 40), and the parties agree that Ohio law applies. (ECF No. 22 at ¶ 9; ECF No. 30 at ¶ 30). This Court will apply Ohio law accordingly.

### 4. Analysis

Coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). "Contract terms are to be given their plain and ordinary meaning, and when the contract is clear and unambiguous, the court may look no further than the four corners of the

insurance policy to find the intent of the parties." *Allstate Ins. V. Eyster*, 939 N.E.2d 1274, 1280 (Ohio Ct. App. 2010) (internal quotations omitted). "[W]here the provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King*, 519 N.E.2d at 1383. "Nevertheless, this rule of insurance-policy interpretation will not be applied in an unreasonable manner." *Allstate Ins. Co.*, 939 N.E.2d at 1280.

"Resident-relative liability exclusions have been found to be valid in Ohio as a means to prevent fraudulent intrafamilial lawsuits brought for the sole purpose of reaping a monetary windfall through an insurance policy." *Allstate Ins. Co. v. Eyster*, 939 N.E.2d 1274, 1281 (Ohio Ct. App. 2010) (collecting cases). "[A] resident of a household for purposes of an insurance policy has been defined as one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excluding a temporary or transient visitor." *Id*; *Nationwide Ins. Co. v. Alli*, 896N.E.2d 742, 747 (Ohio Ct. App. 2008) ("Al was a regular resident of her household based upon the 'duration and regularity' standard); *Farmers Ins. Of Columbus, Inc. v. Taylor*, 528 N.E.2d 968, 969 (Ohio Ct. App. 1987) ("the word resident as used in the phrase resident of your household refers to one who lives in the home of the named insured for a period of some duration or regularity"); *Am. States Ins. Co. v. Guillermin*, 671 N.E.2d 317, 321 (Ohio Ct. App. 1996) (same). However, a person can only have one "primary residence" even if the person apportions his or her time between two different residences. *See Wallace v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 4216132 (Ohio Ct. App. Nov. 30, 2007) (although the record showed that the decedent "apportioned her time living with both parents," she can only maintain one residence).

The Court finds the contract language here to be clear and unambiguous, and therefore looks to the plain meaning of "resides primarily with" the insured. *See Allstate Ins.*, 939 N.E.2d at 1280. Mramer cannot have primarily resided with the insured without residing with the insured. *See Estate of Jackson v. State Farm Ins. Co.*, 2008 WL 4823594, *4-5 (Ohio Ct. App. Nov. 3, 2008) (Because the decedent did not live with the insured, he is not entitled to UM/UIM coverage because he did not "reside primarily" with the insured.) His eight-to-nine-day visits to Ohio for doctor's appointments or for the holidays does not make him a resident under the duration and regularity test. The undisputed facts demonstrate that Mramer had been living in his apartment in Miami at the time of the accident on November 1, 2017. Since Mramer moved to Florida in July 2016, he returned to Ohio "multiple times for several days," but he "was sleeping every night at his apartment in Miami" and "spending a majority of his time at his apartment in Miami." (ECF No. 22 at ¶ 20.) The undisputed facts demonstrate

that he did not primarily reside with his mother. *See Am. States Ins.*, 671 N.E.2d at 321 (adult son who stayed with his mother "on an inconsistent or occasional basis" was not a resident under the duration and regularity test).

The Court notes that a domicile and a primary residence have two different meanings. "Because 'domicile' and 'residence' are usually in the same place, they are frequently used as if they had the same meaning." *Schill v. Cincinnati Ins. Co.*, 24 N.E.3d 382, 387 (Ohio 2014). "'Domicile,' however, means living in a locality with intent to make it a fixed and permanent home, while 'residence' simply requires bodily presence as an inhabitant in a given place." *Id.* While Mramer may be domiciled in Ohio, this policy's resident relative clause does not extend to those who are domiciled in the same house as the insured but do not reside there. *C.f. Schill v. Cincinnati Ins. Co.*, 24 N.E.3d 1138, 1140 (Ohio 2014) (where "policy defines resident relative as a person related to you by blood…and whose legal residence of domicile is the same as yours" the issue is where the alleged resident relative was domiciled, not where he resided.)

### 5. Conclusion

In sum, the Court **grants** State Farm's motion for summary judgment (**ECF No. 23**) and **denies** Mramer's motion for partial summary judgment (**ECF No. 28**) because Mramer does not qualify as a "resident relative" under the policy. The Court directs the clerk to **close** this case and to remove it from the trial calendar. Any pending motions are **denied as moot**.

**Done and ordered** at Miami, Florida, on October 24, 2019.

Robert N. Scola, Jr.
United States District Judge